```
              UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                   ALEXANDRIA DIVISION


  BLUE FLAME MEDICAL, LLC,    )
                              )
          Plaintiff,          )   Civil No. 20-658
                              )
     v.                       )
                              )
  CHAIN BRIDGE BANK, N.A.,    )   Alexandria, Virginia
  et al.,                     )   September 8, 2020
                              )
          Defendants.         )
  _____ )

             TRANSCRIPT OF MOTION HEARING
               VIA TELEPHONE CONFERENCE
         BEFORE THE HONORABLE LEONIE M. BRINKEMA
               UNITED STATES DISTRICT JUDGE

             APPEARANCES:

  For the Plaintiff:       PETER HUGH WHITE, ESQ.
                           Schulte Roth & Zabel LLP
                           1152 15th Street, NW
                           Suite 850
                           Washington, D.C.  20005

  For the Defendants:      GARY A. ORSECK, ESQ.
                           Robbins Russell Englert Orseck
                              Untereiner & Sauber LLP
                           2000 K Street, NW
                           Fourth Floor
                           Washington, D.C.  20006



  Court Reporter:    PATRICIA A. KANESHIRO-MILLER, RMR, CRR



  Proceedings reported by stenotype shorthand.
  Transcript produced by computer-aided transcription.
```

```
 1                      P R O C E E D I N G S
 2                          (9:38 a.m.)
 3           THE COURT:  Are the parties on the line for Blue
 4   Flame Medical, LLC, versus Chain Bridge Bank?  We're a little
 5   bit early, but are you all there yet?
 6           MR. WHITE:  Your Honor, this is Pete White from
 7   Schulte Roth for the plaintiff.  I am here.
 8           THE COURT:  All right.  How about for the defendants?
 9           MR. ORSECK:  Good morning, Your Honor.  This is Gary
10   Orseck from Robbins Russell for the defendants.
11           THE COURT:  How do you spell your last name, please?
12           MR. ORSECK:  O-R-S-E-C-K.
13           THE COURT:  Mr. Orseck, you're going to be the main
14   spokesperson for the defendants?
15           MR. ORSECK:  That's right.
16           THE COURT:  All right.  Then we have everyone who we
17   need online.
18           So this is, as I said, Blue Flame Medical, LLC,
19   versus Chain Bridge Bank, et al., 20-CV-658.
20           Gentlemen, we are on the record.  I have a court
21   reporter with me, so it is going to be very important to
22   state your name before you speak so that we can attribute the
23   correct statements to the correct people.
24           All right.  This is the defendant's motion to dismiss
25   the 10-count complaint that's been filed in this case, and
```

1  before we get into the discussion, I just wanted to ask you,
2  Mr. Orseck, how in the world do you prove any damages if any
3  of these claims do go forward given the information that was
4  in Exhibit A attached to the defendant's motion to dismiss,
5  which is a detailed discussion -- and it is on your part, it
6  is a statement attributable to Blue Flame -- of the inability
7  of Blue Flame to deliver the N-95 masks to other states after
8  California?  In other words, to me, one of the arguments that
9  is most telling is the argument that only a few days or weeks
10 after this California transaction which fell through, that
11 your client, Blue Flame, was unable to deliver any masks to
12 the State of Maryland.  And so I don't understand how there
13 could possibly be -- even if there were liability on any of
14 these claims -- how there could possibly be any damages that
15 you could point to in this case.  After this transaction fell
16 through with California, number one, you were able to
17 continue to get contracts with other states and with other
18 entities for the products; and number two, not because of
19 your fault -- I recognize the realities of what was going on
20 here -- but you were unable to deliver any significant
21 quantities of these masks.  And as I understand it, the deal
22 with California was for millions of these N-95 masks.
23         So where are your damages in this case, Mr. Orseck?
24         MR. WHITE:  You addressed that question to
25 Mr. Orseck, but he represents defendants.

1          THE COURT: I'm sorry. Mr. White.

2          MR. WHITE: I thought you meant that one for me.

3          Your Honor, part of the problem here is reliance on information outside the complaint is inappropriate, and this is exactly why. It is a factual matter. There are 1.55 million masks on their way to be delivered to Maryland right now. They were delivered on time. We expect them to be accepted by Maryland. The status of that situation at the time of the letter that was sent, leave aside whether the letter is appropriate for consideration at this point, but the status of things at that time are not set in stone. The fact of the matter is they were able to accomplish that delivery. They're in the process of accomplishing that delivery. 1.55 million masks are on their way to Maryland right now on a boat. So it really shows the extent to which plaintiffs are trying to rely on stuff that is not in the complaint to defeat the well-stated claims in the complaint because those aren't before the Court at this point. Obviously, as you know, damages is premature at this point, but there is no possibility of damages. I understand the Court's concern. The reality is the actions by Chain Bridge Bank here caused -- and the evidence will show when we get to trial -- the actions by Chain Bridge Bank caused very significant consequential damages; and the inappropriate, clearly inappropriate cancellation under the U.C.C. of money

1   that had been placed into the beneficiary's account without
2   the beneficiary's consent caused incredible consequential
3   damages to plaintiffs.  So the reality is they were able to
4   pull the Maryland deal out of the ditch, but it became so
5   much more difficult because of what defendants here did, and
6   that's what damages are all about.  There were significant
7   consequential damages as a result of the improper conduct of
8   Chain Bridge Bank, which both violated Federal Reserve
9   Regulation J, which incorporates the U.C.C., the Court is
10  aware, expressly violated that, but also tortiously
11  interfered with the contract with California and their
12  business expectancy and defamed them.
13          THE COURT:  All right.  Again, you're correct, the
14  damages are not the issue directly in front of the Court
15  right now, but I always, when I get a motion to dismiss, want
16  to start talking with counsel wisely about what a case is
17  truly worth because if portions of the complaint do survive
18  the motion to dismiss, then everyone has to think about the
19  realities of the litigation.  I must say, based upon
20  everything that I read, including the exhibits that were
21  attached to the motions, it did strike me as though this is a
22  case where whether there would be any damages was going to be
23  a very significantly open question.
24          But anyway, let's get to the motion that is before
25  us.  The defendant has moved to dismiss all 10 of these

1    counts.  You have briefed the issues extensively, and I'm not
2    going to hear a whole lot of argument.  But, Mr. White, you
3    do have to address this argument about preemption because the
4    defendant has correctly argued that there is a strong
5    doctrine of preemption where there are state causes of action
6    that essentially overlap or dovetail the U.C.C. claims, and
7    that would affect several of your state causes of action.
8    You want to address that, please.
9            MR. WHITE:  I would be happy to, Your Honor.  The
10   defense takes a --
11           THE COURT:  Mr. White, we're having trouble hearing
12   you because we are having so many people signing in.  Can you
13   speak louder, please.
14           MR. WHITE:  My apologies, Your Honor.
15           The defense tried to have both sides of the issue.
16   They want to pick and choose -- this is Peter White again --
17   that want to pick and choose the parts of the U.C.C. that
18   apply.  They at some point say that the U.C.C. does not
19   apply.  Obviously, it can't be preempted if it does not
20   apply.  The general preemption argument is that there are
21   state law claims, and tortious interference of contract is a
22   clear one, that go beyond what the U.C.C. governs.
23   Defamation is another very obvious one, as well, as is breach
24   of contract in this context.  The breach of contract here was
25   the agreement, the accounts agreement, and their conduct is

1  not covered by the preemptive -- their conduct was outside of
2  the U.C.C.  That means that it is beyond the preemptive
3  conduct.  The tortious interference claim in particular, Your
4  Honor, that is the one that I think is most clearly beyond
5  the scope of any preemption by the U.C.C. because there is an
6  external contract involved.  I don't think the plaintiffs
7  even seriously make the argument that the tortious
8  interference claim is preempted.  I think that argument is
9  best made as to the breach of contract and negligence claims.
10 But the tortious interference claim, because it deals with a
11 contract and a business expectancy entirely outside of the
12 relationship that the U.C.C. governs, that is clearly not
13 preempted.
14          THE COURT:  All right.  Well, you have basically
15 answered my question because I agree with you that counts 4,
16 5, and 9 -- that is, the two tortious interference counts and
17 the defamation count -- raise sufficient issues beyond what
18 is involved in the U.C.C. claims, that they're not preempted.
19 But certainly count 3, which is conversion, counts 6 and 7,
20 which are for fraud and constructive fraud, count 8, which is
21 for negligence, and count 10, breach of contract, it seems to
22 me are definitely preempted, so I'm going to grant the motion
23 to dismiss as to those counts.
24          And the other issue that I want to hear discussed is,
25 you've raised two counts under the U.C.C.  The second count

1    has to do, as I understand it, with your theory that the
2    defendants violated the U.C.C. by returning the payment that
3    had been sent to them from California.  Right?  That they
4    basically issued -- they had accepted -- they basically
5    accepted a payment order to pay out.  And I'm not sure that's
6    exactly how you've pled the case, first of all, from a
7    technical pleading standpoint.  But why do you need count 2
8    if you have count 1?
9            MR. WHITE:  For a couple of reasons, Your Honor.
10   Number one, the damages calculations are different under the
11   private causes of action.  Number two, I guess in a
12   certain -- if the facts come up in a certain way, they could
13   become alternative.  But the theory under count 2, it is
14   clear that the money came into the account or was accepted
15   under the U.C.C.  That is not an issue now, it is not going
16   to be an issue later.  So the money was in that account.
17   That money was being transferred out of the account.  The
18   only way that that could really happen is by a payment order
19   issued out of that account.  If it turns out that the way
20   that it was issued out of the account and back to
21   California's account at JP Morgan, that's a payment order
22   that is not authorized by the beneficiary.  That's the core
23   of the count 2 claim, Your Honor.  It is unclear, frankly,
24   from the documentation that was attached, which I don't think
25   is appropriate for the Court to consider at this point, but

1    even if the Court considers it, all that talks about is a
2    request.  It doesn't talk about what mechanism was used.  We
3    have stated enough facts to entitle discovery to determine
4    whether legally what was done was a payment order out of the
5    beneficiary's account, Blue Flame's account, without Blue
6    Flame's consent because clearly they did not consent.  And if
7    that occurred, that is the count 2 liability.
8             THE COURT:  All right.
9             MR. ORSECK:  If I may respond on count 2?
10            THE COURT:  Go ahead.
11            MR. ORSECK:  Yeah, Mr. White is skipping past the key
12   operative language of Section 204(a), which in order to
13   impose liability requires that the payment order be, quote,
14   "issued in the name of the bank's customer as sender."  All
15   of the cases that apply Section 204(a) are instances where a
16   third party either forges the customer's name or purports to
17   act in the name of the customer and sends a payment order to
18   the bank that is either unauthorized or not effective.  So
19   Mr. White is asserting that the return of the money from my
20   client, from Chain Bridge Bank, was not authorized -- I
21   understand that's the pleading -- but they don't plead that
22   the payment order was issued in the name of the sender.  To
23   the contrary, multiple times in the complaint -- and I can
24   point you to paragraphs 72, 77, 78, and 110 -- the theory
25   here is that in response to our allegedly improper

1               communication to the State of California, California issued a
2        request that the money be returned.  And there is no
3        authority, either in the text or in any of the caselaw that
4        has been cited or in any caselaw that we have found at all
5        that applies Section 204(a) in that instance.  I think the
6        reason that the plaintiff has tacked on that count is because
7        in that count, and in that count alone, they seek as damages
8        enforcement of the entire payment.  So, in other words,
9        they're asking that we be liable for the $456 million that
10       was in the original wire.  For reasons you alluded to at the
11       outset, I think this entire suit is seeking a massive
12       windfall, but none nearly so much as count 2, for which there
13       is just no statutory basis.
14                    THE COURT:  But wouldn't you agree that at this
15       stage, which is just the motion-to-dismiss stage, the
16       plaintiff is correct that we would need to look at some of
17       the evidence to see exactly how these various wire
18       transactions were delineated.  And I'm a little concerned
19       about dismissing this count at this point without a little
20       bit of discovery.  It seems to me that because the case is
21       being pared down by today's rulings, you ought to be able to
22       focus on what I think everybody agrees are sort of the key
23       points of the discovery.  For example, exactly what was said
24       by the bank officials to the California people.  As you know,
25       your argument about the defamation claim is that you were

1     either stating an opinion, which would not be actionable
2     under a defamation theory, or you had basically -- it was a
3     legal obligation on your part, frankly, that you had a
4     privilege to be able to make these statements to the
5     California authorities as a responsible bank.  And that
6     would, it seems to me, play a little bit into counts 1 and 2,
7     as well.
8          I'm reluctant to dismiss count 2 at this point.
9     Again, I think there are significant problems with this case.
10    As I said, I don't really see at the end of the day how the
11    plaintiff is going to be able to recoup damages, especially
12    because, as I said, there is no evidence at least right now,
13    and there is no claim really in the complaint, that the
14    plaintiff was unable to get further contracts to sell these
15    products.  In our conversation today apparently Maryland
16    didn't cancel the contract.  So even after all this problem,
17    they're still apparently in business.
18         So what I'm going to do today is I'm going to go
19    ahead and grant the motion to dismiss in part and dismissing
20    the state law claims that I designated earlier on the basis
21    of preemption.  So as I said, counts 3, 6, 7, 8, and 10 are
22    out.  I'm going to let counts 1, 2, 4, 5, and 9 go forward,
23    five counts go forward.  And we will see how the case works
24    itself out.  I, however, strongly recommend that both sides
25    think very quickly about whether this case should go forward

1      and whether or not you might want to try to talk to a
2      mediator to see if you can settle this because I think the
3      discovery might get a little bit expensive, and they're might
4      be some difficulties, because obviously there are going to be
5      state officials from California who are going to have to be
6      deposed.
7              Is Blue Flame Medical, LLC, still in business,
8      Mr. White?
9              MR. WHITE:  Yes, Your Honor.
10             THE COURT:  So, obviously, it has got another bank to
11     work with it, and it has contracts, you indicated, still
12     going forward; correct?
13             MR. WHITE:  Your Honor, actually -- I know that their
14     account was terminated at Chain Bridge Bank; I do not know
15     their current banking arrangement.
16             THE COURT:  They must have a bank someplace or they
17     wouldn't be able --
18             MR. WHITE:  They must, Your Honor.  I just don't know
19     what it is.
20             THE COURT:  So one representation that I got in one
21     of the papers I was reading, if in fact, for example, Blue
22     Flame was representing to the California authorities that all
23     these masks were sitting in a warehouse in Long Beach -- I
24     mean, that was mentioned in one of the pleadings -- you know,
25     obviously, that wasn't the case.  Now, maybe that statement

1    wasn't made; I don't know.  I guess the people in California
2    with whom they were dealing would know about it.  But as I
3    read the complaint, you all started talking to the California
4    people in early March.  This company wasn't even formed until
5    March 23rd.  The account gets opened on March 25th.  This
6    wire transfer occurs on March 26th.  The timing is quite
7    incredible, especially when you look at the amount of money
8    that was involved.  What?  $456 million.  I mean, there are
9    all sorts of strange issues in this case, and I think wise
10   parties ought to think about evaluating the case more
11   realistically.
12           But at this point, as I said, I'm going to let those
13   counts go forward, and that's my ruling for today.
14           So if you do need to work with a magistrate judge on
15   this case, Judge Davis is the magistrate assigned, and of
16   course there are lots of private mediators out there, as
17   well.
18           All right, gentlemen, thank you for calling in.
19           (Adjourned at 9:58 a.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER


I, Patricia A. Kaneshiro-Miller, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.



/s/ Patricia A. Kaneshiro-Miller
----------------------------------
PATRICIA A. KANESHIRO-MILLER               September 9, 2020

PATRICIA A. KANESHIRO-MILLER, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA